**In the Matter of Ronald E. WELDY, Respondent.**

**No. 49S00–1103–DI–120.**

Supreme Court of Indiana.

June 28, 2013.

*PUBLISHED ORDER APPROVING STATEMENT OF CIRCUMSTANCES AND CONDITIONAL AGREEMENT FOR DISCIPLINE*

Pursuant to Indiana Admission and Discipline Rule 23(11), the Indiana Supreme Court Disciplinary Commission and Respondent have submitted for approval a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating agreed facts and proposed discipline as summarized below:

**Stipulated Facts:** *Count 1.* In 2007, Client 1 retained Respondent to represent her in a wage claim action. Respondent thereafter neglected the case and failed to communicate with Client 1 despite her repeated requests for information. At one point, Client 1 went to Respondent's office and found he had moved without providing her with his new address. Respondent did not inform Client 1 that her case had been subject to a T.R. 41(E) "call of the docket" for lack of prosecution in 2009. In November 2011, Respondent praeciped for a trial date. A bench trial was held on November 29, 2012. Client 1 was pleased with Respondent's efforts. However, on February 25, 2013, the trial court issued a ruling adverse to Client 1, and a motion to correct error is pending.

*Count 2.* In 2005, Client 2 retained Respondent to represent her in an employment discrimination action. The fee

agreement provided that Respondent would be paid the amount of any award designated as attorney fees plus 20% of the remainder of the award, and that Respondent and Client 2 "must agree prior to any settlement the amount of the attorney fees to be designated in the settlement if said attorney fees are not dictated by the defendant." The case was settled for a lump sum payment of $25,000. Afterward, Respondent presented Client 2 with a statement that would have designated $8,000 of the settlement as attorney fees, without explanation of the advantages and disadvantages of the designation. Client 2 did not agree to this or any other amount as attorney's fee. After Client 2 filed for bankruptcy relief, Respondent served as attorney for the bankruptcy trustee, and the bankruptcy court determined his fee for his services.

*Count 3.* In response to a targeted solicitation letter from Respondent, Client 3 retained him to pursue a wage claim action in 2008. Respondent explained to Client 3 that his fee would be a percentage of the amount recovered, including statutory attorney fees. Respondent did not send a written fee agreement for Client 3 to sign. The claim was settled for $3,291.69 plus $675 in statutory attorney fees. Respondent claimed 40% of the total ($1,586.68) as his fee, which Client 3 disputed. On May 30, 2013, counsel for Respondent spoke with Client 3 about the fee dispute. As a result of this conversation, Respondent refunded $911.68 to Client 3.

*Count 4.* In 2006, Respondent filed a wage claim action on behalf of Client 4 and made no substantive progress for nearly a year. Client 4 terminated the representation but Respondent did not withdraw his appearance. When he was later re-hired, Respondent failed to advance the case, at one point mistakenly telling Client 4 that a motion for summary judgment had been filed when it had not been. The case was dismissed on a T.R. 41(E) call of the docket in late 2009. Respondent did not inform Client 4 of the dismissal. Prior to the dismissal, Respondent had learned that the defendant was no longer in business and obtaining a judgment would not have resulted in the collection of any damages.

*Count 5.* In January 2008, Client 5 entered into a written contingent fee agreement for Respondent in a wage claim action. He then failed to respond to her requests for information with her for over a year. (The outcome of this case is not disclosed.) In May 2009, Client 5 hired him to represent her in a second wage claim action, with no written fee agreement. In September 2009, the second claim settled for $4,800, with $2,500 designated as statutory attorney fees. Respondent then asked Client 5 to sign an agreement that would have entitled him to $2,938.50 in fees. When Client 5 declined, Respondent refused to communicate with Client 5 for about three months. In response to Client 5's pleas, Respondent completed the settlement paperwork. When the employer sent Respondent a check for $4,800 in March 2010, Respondent kept the check in a drawer and filed a small claims action against Client 5. After trial in October 2010, the court ordered him to deposit the entire amount of the settlement check with the court. The court eventually awarded Client 5 $3,787.50 and Respondent $1,012.50.

*Count 6.* In 2007, Respondent agreed to represent Client 6 in a proposed class action against Clarian Health Partners, Inc. ("Clarian") relating to alleged violations of Indiana's wage and hour laws. In support of a motion to compel discovery responses,

Respondent asserted that counsel for Clarian had acknowledged that certain discovery responses were due on a certain date, knowing that this assertion was untrue. The trial court imposed sanctions under T.R. 37(A)(4). In 2009, Clarian and Client 6 settled their dispute, rendering the purported class without a representative. Respondent filed an appeal, purportedly on behalf of Client 6, challenging the sanctions against Respondent and raising two class action issues. Client 6 then died. The Court of Appeals ruled that class action issues were moot and affirmed the sanctions. Respondent filed petitions for rehearing and for transfer, purportedly behalf of Client 6, which were denied. Two Justices indicated that they would consider a petition for damages, including attorney fees. The Court of Appeals then awarded Clarian fees and costs against Respondent under Appellate Rules 66(E) and 67 for frivolous and bad faith appellate filings. The Court of Appeals found, among other things, that Respondent persisted in mischaracterizing nature of his motion to compel and that he failed to acknowledge the general rule that dismissal is required if the claims of a named plaintiff become moot prior to class certification. On February 4, 2013. Clarian filed a petition in the trial court seeking $40,000.00 in attorney fees and costs, which is pending.

*Aggravating and mitigating facts.* The parties cite the following fact in aggravation: Some of Respondent's misconduct was due to a dishonest or selfish motive. The parties cite the following facts in mitigation: (1) Respondent has no disciplinary history; (2) Respondent was cooperative with the Commission; (3) through no fault of Respondent, there was a delay in filing at least some of charges against him; (4) Respondent's relative inexperience in the practice of law contributed to his misconduct to some extent; and (5) Respondent apologized to Clients 2, 3, 4, and 5 for his misconduct by letters on June 7, 2013.

**Violations:** The parties agree that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.2(a): Failure to abide by a client's decision concerning the objectives of representation.

1.3: Failure to act with reasonable diligence and promptness.

1.4(a)(3): Failure to keep a client reasonably informed about the status of a matter.

1.4(a)(4): Failure to comply promptly with a client's reasonable requests for information.

1.4(b): Failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions.

1.5(b): Failure to communicate the basis or rate of the fee for which a client will be responsible before or within a reasonable time after commencing the representation.

1.5(c): Failure to disclose to a client the method by which a contingent legal fee will be determined.

1.7(a)(2): Representing a client when the representation may be materially limited by the attorney's own self-interest.

1.15(e): Failure to properly secure disputed property until the dispute is resolved.

1.16(a)(3): Continuing representation of a client after the lawyer is discharged.

3.1: Asserting a position for which there is no non-frivolous basis in law or fact.

3.2: Failure to expedite litigation consistent with the interests of a client.

3.3(a)(1): Knowingly making a false statement of fact or law to a tribunal.

8.4(c): Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

8.4(d): Engaging in conduct prejudicial to the administration of justice.

**Discipline:** The Court, having considered the submission of the parties, now approves the following agreed discipline.

For Respondent's professional misconduct, the Court **suspends Respondent from the practice of law for a period of 180 days, beginning August 9, 2013, with 90 days actively served and the remainder stayed subject to completion of at least one year of probation.** The Court incorporates by reference the terms and conditions of probation set forth in the parties' Conditional Agreement, which include:

(1) Respondent shall modify all fee agreements to remove provisions that would require Respondent to negotiate with a client, after execution, any factor that could be used to determine the amount of the fee.

(2) Respondent shall cooperate with a monitor, who will supervise Respondent and submit quarterly reports to the Commission.

(3) Respondent shall complete at least 18 hours of CLE training on applied professionalism, law office management and/or ethics relating to the attorney-client relationship.

(4) Respondent shall have no violations of any rule of the Indiana Supreme Court governing the duties and obligations of an attorney during his probation and shall have in place measure to ensure compliance with these responsibilities.

(5) If it is established that Respondent violated his probation, he shall be required to actively serve the balance of the stayed suspension without automatic reinstatement.

Respondent shall not undertake any new legal matters between service of this order and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). Notwithstanding the expiration of the minimum term of probation set forth above, Respondent's probation shall remain in effect until it is terminated pursuant to a petition to terminate probation filed under Admission and Discipline Rule 23(17.1).

The discipline imposed for Respondent's misconduct might have been more severe had this matter been submitted without the Commission's agreement to the proposed discipline. We note that Respondent's efforts to apologize to and make amends with some of the clients he wronged came more than two years after the Commission filed its verified complaint against him. However, the Court approves the agreement in light of the Commission's assessment that the proposed discipline, which includes 90 days active suspension followed by rigorous oversight by a monitor for a least a year, is sufficient under the circumstances of this case.

The costs of this proceeding are assessed against Respondent. With the acceptance of this agreement, the hearing officer appointed in this case is discharged.

The Clerk is directed to forward a copy of this Order to the hearing officer, to the

parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this order to the Court's website, and Thomson Reuters is directed to publish a copy of this order in the bound volumes of this Court's decisions.

All Justices concur, except, DICKSON, C.J., and RUSH, J., who dissent, believing the penalty to be insufficient for the severity of the offense.